We'll now move to the next case on the calendar, which is D.S. v. Trumbull Board of Education. Counsel, are you both on the line? Yes, counsel for D.S. is on. And yes, counsel for Trumbull Board of Education is on. Okay, so Mr. Trapps, you've asked for two minutes of rebuttal, so we'll give you three minutes to go, and then we'll save two minutes at the end, okay? Thank you, your honors, and may it please the court. Lena Trapps, Sullivan, and Cromwell for appellant D.S. We're here seeking reversal in an independent educational evaluation, or IEE. Under the law, a parent has the right to such an evaluation if, quote, the parent disagrees with an evaluation obtained by the school board. When that happens, the board has two options, accept the request or initiate an administrative hearing to show that its D.S. made his request. To this day, the board has never defended any of its evaluations as substantively appropriate. That is the entire case right there, your honors. With that background, let me turn to a quick overview of the legal issues, and keep in mind that we can win the case on any one of them, whereas the board needs to sweep the table. First, the scope issue. This is the question of whether D.S. disagreed with the 2017 board evaluation, which was limited to behavioral assessment. The district court says as a matter of law, D.S. can't disagree with the omission of assessments. But of course you can, and to the extent that's not clear, we have authoritative guidance from the federal department of education saying three different times can disagree on the basis that the evaluation did not assess the child in all areas related to the suspected disability. The board responds to just give it a second bite and let them do another evaluation, but again that's not what the law says and that's not what the department of ed says. Similarly, the board creates these categories of little E and big E evaluations, but there's no statute regulation or case law supporting that. The statute subjects all evaluations to the same safeguards. Finally, the board says parents will make unreasonable requests, but keep in mind the touchstone appropriateness. If what the board did and did not do is appropriate, then there is no relief available and that is as it should be. Turning to the second big issue, the statute of limitations. Whether, even if we ignore the 2017 evaluation, we get relief based on disagreement with the prior 2014 evaluation. Excuse me, you have one more minute. Thank you. The district court says D.S. can't disagree with that either because of a two-year time bar. That's wrong as a matter of law for three reasons. One, the statute of limitations by its own terms applies to due process complaints only, not to parents IEE requests. The board responds only by invoking the absurdity doctrine, but it is a high bar to rewrite congress's language and they have not shown any absurdity. Two, the board didn't raise the statute of limitations argument in its due process complaint, so that argument is waived. That rule is in the IDEA statute. Three, the court wrongly put the burden on the parents to show when they knew and let the board get away with no proof on this issue. And the burden shifting happened on both issues actually, on scope and timeliness. Each of these reasons, your honor, independently requires reversal. With that, I'm happy to take your questions on any of these topics. All right, Judge Wynter, do you have any questions for Mr. Travis? Yes, I have a question about the triennial broader assessment. Is that the same as what your clients are asking for? No, your honor. The triennialists call that because under the statute, the school boards require to do an evaluation no less than every three years. The independent educational evaluation that we are requesting, your honor, consisted of seven assessments, six of which have never been provided by the school board and they're still at issue today. I thought the triennial assessment was a broader assessment than was necessarily required in the initial assessment. So, your honor, the statute only has two categories in it, initial evaluations and re-evaluations. All of them are subject to the same safeguards and the re-evaluation is sometimes referred to as a triennial because of the requirement that it occur no less than every three years. Although, it could occur more frequently than every three years. There was a quote-unquote comprehensive triennial, as the board would call it, in 2014. As we point out in your brief, that evaluation was actually limited and deficient as well. And then the board did a limited evaluation in 2017 that consisted of just a behavioral assessment. Why is the triennial evaluation referred to as comprehensive or broader? Your honor, I think that's... Sorry, go ahead, your honor. I'm sorry to cut you off. Go ahead. Go ahead. Your honor, that's the nomenclature the board uses. Again, we don't see any distinguishing between quote-unquote comprehensive triennials and more limited non-triennial re-evaluations in the statute or regulations. And for that matter, in the board of guidance that we cite, which we submit as entitled to deference, they refer to two categories, initial evaluations or re-evaluations. And they say you can get an IEE on either if you disagree on the basis that that evaluation did not evaluate all areas of suspected disability. Okay. Thank you. Judge Wesley, do you have any questions? Yes, I do. As I understand, I'll be frank with you. I think one of the problems that I have with this case is that the board concedes that the FBA is an evaluation. And let me ask you, in the statute, I've looked through the statute and the regulation. Is evaluation ever clearly defined to encompass what it encompasses, the term evaluation? Your honor, I think it's not quite clear. But you're correct that the board concedes that it's because the functional behavioral assessment is not akin to what occurs every three years, either the initial or what you referred to as the initial or the re-evaluation. Every two years, there's supposed to be a complete workup on the child. Is there not? At least every three years, there's supposed to be an evaluation in all areas of suspected disability. Right. So, a child presents themselves with, they're on the autism spectrum, but they have some verbal skills. And they have certain difficulties with regard to language. They have other difficulties with regard to perhaps writing or organizing thoughts. And then they present an array of behavioral issues that also either, that educators have no choice but to deal with in the context because educating the child requires both dealing with the behavioral aspects of the child and the child's intellectual disabilities. Correct? Correct. But your honor, that could very much be appropriate under the circumstance. Right. I understand that. But in the years in between the triennials, a functional behavioral assessment is allowed. But the functional behavioral assessment just looks at what's going on with the child's behavior and what the school district is doing to ensure that the child's behavior isn't interrupting their opportunities to learn. Correct? That's correct. But your honor, perhaps you can imagine a situation where the only issue. Yeah. So, what happens is that you had a functional behavioral assessment that's done and the parents say, well, we disagree with this and we want to look at other things. Correct? We want these other things looked at. And they say, and these are things that you never have ever looked at. You didn't look at them in the 2017 triennial evaluation. Correct? Correct. They did not look at it in the 2017 evaluation. Right. So, they're objecting to a functional behavioral assessment, but what they're asking for is something in which they were citing the inadequacies of the 2017 triennial evaluation. Am I right there? I think you meant to refer to the 2014 triennial. 2017 was never conducted, right? There was a plan to do the 2017. I'm sorry. Didn't come off. Correct? I apologize. So, 2014. You're right. Okay. So, your honor, it's my understanding that there was a 2017 triennial conducted, but it did not include any of these assessments. I'm right. Correct. And that is not what was, that occurred after all of the litigation was initiated. Right. So, if there hadn't been that stipulation, if there hadn't been that concession, let me ask you this. Under the statute and the regulations, does an FBA, a functional behavioral assessment occurring midterm between the triennial assessments, does that trigger, in your view, under the statute, and tell me where, or under the regulations, where it then triggers the parent's right to an IEE? Yes, your honor. That is our view. So, the board doesn't just concede this. So, your honor, I'm looking at 20 U.S.C. 1414. It only has initial evaluations. Right. Right. And re-evaluations. Right. And you told me in your opening statement that that was the triennial evaluation. You never said anything about an FBA. Your honor, the FBA is- I'm not fighting with you. I'm just trying to figure out whether we're in a box by that concession. That's all I'm trying to understand. Sure. So, the reason the board conceded it, let me just give you a little bit of context on that, is because there are multiple cases from district courts around the country finding that an FBA is an evaluation. And that's because- So, there are others who disagree with it? Sorry, your honor. I didn't catch that. There are others who disagree with that, aren't there? Certainly, none of them have been cited in the briefing. Okay. Go ahead. And an FBA, yes, it looks to the functions of the student's behaviors. But that is itself a fairly broad inquiry. As we point out, even the assessment that DS was requesting related to behavior. And you can imagine easily a situation where, hypo one, a student has only behavioral areas of suspected disability. In that case, an evaluation with only a functional behavioral assessment would be quite appropriate. Hypo two, you do an evaluation that consists of many different assessments. It is appropriate. It is operative. It remains up to date. But an issue arises only with the student's behavior and the school board supplements with a functional behavioral assessment. Now, if the parents challenge that and try to get more, the school board can go into an We have an appropriate evaluation right now of the student. We've looked at every area of suspected disability. And we have an up-to-date evaluation of the student. There is nothing that has come up since that time. Is it your view that under the statute that the functional behavioral assessment is an evaluation as anticipated by the statute, which then triggers the parent's right to request an IEE? Yes, your honor. So you agree with the concession? Yes, your honor. All right. And lastly, in light of that, then, but you say that notwithstanding the limited scope of the functional behavioral assessment, the IEE request can be broader than that because, A, the regulation allows it and B, the parents may wish to explore other aspects of the child's disability and or behavior beyond what the functional behavioral assessment did so that they're entitled to have, that the, in essence, the IEE request shouldn't necessarily be defined by the limitation of the FBA. Is that correct? That's correct, your honor. Okay. Thank you. This is Judge Sullivan. I guess I want to follow up on a couple of those things. So, I mean, it seems pretty clear under the statute and regs, there's an initial evaluation to assess whether the child has a disability and that happened. But then a reevaluation that has to happen at least every three years, but it can happen more often if the school thinks another evaluation is appropriate or if the child's parents or the teacher requests a reevaluation, right? Correct, your honor. Okay. And that can't happen more than once a year, though. That's the limitation. One caveat to that. The parents and the school board can agree to have it occur more than once a year. Exactly. Right. Okay. But so the goal here is to get an evaluation and a reevaluation at least every three years, but realistically, for most kids, three years is an eternity. And so a lot of school districts do these routinely every year. But in this case, I guess, like Judge Wesley pointed out, we have this FBA, which isn't really what is considered to be the triennial reevaluation, correct? They're different. Your honor, we would not concede that they are supposed to be different. But that is certainly the distinction that the board is making. And yes, the FBA was limited to looking only at behavior and we say improperly. But children are assessed all the time, even ones without disabilities. I mean, there are constant assessments being made. And you're taking the position that any is a reevaluation for purposes of triggering obligations for an IED. Is that correct? Well, the FBA, I think, is a little bit unique here. Again, courts have found that it constitutes an evaluation because it is wide ranging and uses a variety of assessments and tools. And the board, as Judge Wesley noted, affirmatively concedes that it is an evaluation. And I also would submit that an evaluation is a process containing multiple assessments. It does not necessarily have to occur at the same point in time. There can be multiple assessments over time. But this was truly an evaluation that consisted of one assessment. And the question for your honors is whether that was appropriate after DS agreed with those 2007 tests in IEE. Now, I know it sounds strange in retrospect to say that the parents wanted to get the evaluation done as quickly as possible. I realize that at the end of this appellate process, this is a strange point, but that was the intention at the time. Time is obviously very important in a student's academic career. And they did not know it would take this long. They wanted to not have the board string along the parents further and conduct an evaluation. At the end of the year, given all of the distrust that occurred when they saw the records. Yeah, but I mean, I don't know anything about distrust, right? There has to be a triennial evaluation. It doesn't turn on whether there's trust. I mean, it has to be done. And if the parents don't like what they got, if they don't like the evaluation, then they can ask for an independent evaluation at public expense. But you have to wait for the evaluation, don't you? The re-evaluation. So your honor, I'm reading here from a letter from the Office of Special Education Programs to Carol, which we include in, I think, the special appendix from 2016. It would be inconsistent with the provisions of the regulation 300.502 to allow the public agency to conduct an assessment in an area that was not part of the re-evaluation before either granting the parent's request for an IEE at public expense or filing a due process complaint to show that its evaluation was appropriate. Because they did not evaluate DS in all areas of suspected disability in 2017, and because I know we haven't touched the statute of limitations issue yet, because they didn't do that adequately in 2014 either and hadn't done it since, the school board does not get a second chance under the regulation. It seems to me what you're saying is that the parents get to dictate the conditions and terms of the re-evaluation in advance. And that's not obvious to me. And it certainly seems like it's that would not be a system designed for efficient outcomes. And it would result in what we have here, which is, you know, years before the child is appropriately assessed and is able to get the benefit of an independent evaluation. Your Honor, by no means are we arguing the parents should dictate. Of course, the parents can disagree. And then the ultimate touchstone is appropriateness. The board can show to a hearing officer, if it gets to that point, that its evaluation is appropriate. And I submit, Your Honor, that if the evaluation is not appropriate and is lacking, that it better to be addressed then and have the evaluation done that forms the foundation for the public education the student is receiving, instead of having litigation on the back end about whether the student was deprived of a free and appropriate public education. All right. Let's pause there. You've reserved two minutes for rebuttal. We'll now hear from Mr. Driscoll. Thank you, Your Honors. Thank you. Thank you, Your Honors. And good morning, Ryan Driscoll and Bertram Moses on behalf of the Trumbull Board of Education. May it please the a child is, in fact, an evaluation and need test all areas of suspected disability. That is not, in fact, the case. An evaluation is defined in certain portions of the statute as either an initial or triennial reevaluation, as the court has just discussed. One of the issues that is presented is that in the course of doing initial or triennial evaluations or in the course of the daily or yearly educational programming of a child, boards of education are required to conduct assessment of the child, whether it be a reading assessment, an occupational therapy assessment, some other lesser assessment than an initial or triennial evaluation. In the statute, even 20 U.S.C. 1414 specifically talk about that. There's guidance from the Board of Education's brief that provides that in the course of planning a child's individualized education program or an IEP, a board shall frequently do periodic non-comprehensive testing to determine the programming and whether the programming has been met. Many of those tests are not designed to be comprehensive, nor should the right to an IEE from those tests be comprehensive. In order to challenge or request an IEE, a parent must, under the statute, disagree with a test that's been obtained by the board or an evaluation. The key words there are disagree and obtained. Here, the parents have disagreed with an evaluation and they disagreed with an evaluation. The parents initially consented to a 2017 triennial evaluation. That consent was later withdrawn, so the board never actually obtained... You have one more minute. Thank you. The board never actually obtained a 2017 triennial evaluation, and as the district court appropriately pointed out, the requirement for a board of education when responding to an evaluation was appropriate. Simply put, if no evaluation was obtained, then one cannot be shown to be appropriate, particularly where the underlying evaluation is what we call a periodic non-comprehensive, or in our words, a little e evaluation. The right to an IEE is to give parents information so they can conform or disagree with what the board has done, and that properly narrows the scope of what they're entitled to. Here, the board properly defended its IEE by requesting a due process hearing, and then in the course of that, determined that they would approve an FBA. There were no other evaluations to defend, and it was unnecessary to defend those because they had not yet been obtained. If there are any questions from the court, I would be willing to take them at this time. All right, Judge Winter, do you have any questions for Mr. Driscoll? No, I have no questions. All right, and Judge Wesley? I'm trying to unpackage what you just said. Is it your view that the parents could not ask for evaluations that went to beyond the, I mean, the ruling on, the ruling the court was is that, well, the FBA is limited, but the parents are seeking is a much broader based assessment. Is that correct? That is correct. And the district court says, well, that's appropriate, but that's clearly inconsistent with the regulations, isn't it? I don't think it is because I think what the regulations and the statutes are talking about are you have an initial evaluation to determine whether a child is eligible for special education and related services. Then there is a yearly requirement where both administrators and teachers meet with parents in what they call the PPP, the team to determine what the student's individualized educational plan is. And I think that during the course of the children's yearly education and determining what the IEP is, there's a variety of assessments done. And not all of them are comprehensive, meaning they don't all evaluate every single possible disability a child may have. They may be, they have to be in many cases, very limited. So a behavioral test, an occupational therapy test. And I think what the parents propose is that any time a board of education conducts any one of those single tests and they disagree with it, they're opening the entire universe of evaluations. And I don't think that is what the statutes intend. Well, but the district court seemed to indicate that it was kind of conscribed because the functional behavioral assessments conscribed. But what precludes a parent from saying, well, you haven't thought about this as this aspect or that aspect. A parent's objection wouldn't necessarily be just to the logic of the, or the reasoning within the FBA. It might be that you haven't considered some additional data that might be relevant to the functional behavioral assessment. That's an appropriate thing to request, isn't it? It is an appropriate thing. It's almost measured. If an assessment omits important data, a good, a valid criticism of the assessment is it completely ignored all this data, isn't it? That's a legitimate criticism. It is. It is. And I think the answer to that question is twofold. And the first is that parents are always entitled to make a claim that their child's education is not appropriate or that the proper assessments haven't been done. And that is typically made in the formal way. The parents requesting a free and appropriate public education or FAPE, and that leading to the parents in some cases, bringing a due process claim. The request as to an IEE is more narrow. The purpose of an IEE is to provide the parents, as many cases have shown, to have them get information to know whether the underlying assessment is appropriate or whether they have a disagreement with it. It provides the parents with a mechanism to have an expert that is on equal footing with what the board has done. What we have here is a functional behavior exam. And what the parents are seeking as a result of that is a variety of other things, such as occupational therapy, assistive technology, things that are outside the scope of a functional behavior exam and would never be tested by a functional behavior assessment. So that... Why did you concede then that the FDA was in some ways an evaluation that then triggered an evaluation under the statute that then would because the term is evaluation. And you concede that it was an evaluation as if it were the equal to or the statutory equal to or the definition equal to a triennial assessment. I mean, you're making the case that there's a difference, a substantial difference, and yet you concede that this is an evaluation. And then we get all this law that's made by the district court without any reference to regulation or other about that inherently there's that a parent's request or challenging an FDA is entirely different than an IAE. I don't understand that at all. The reason we've conceded that is there was in our estimation precedent that did support the finding that an FDA is an evaluation. We believe that the statute primarily... Based on that concession then, under the state, isn't a parent entitled to make a request for an IAE on an evaluation which they disagree? The parents are absolutely entitled to make requests. Okay. And does not the regulation say that a parent does not necessarily have to agree with all... The parent can ask for testing in areas in which there was not and has not DOE specifically indicated that they can ask for areas in which they disagree with or that areas that were not tested. The difference is in the letters from the U.S. Department of Education, the letters to Carroll, the letter to Boss, both of those deal with the underlying situation of an initial or triennial evaluation, which are by their very nature comprehensive. So intention... Right. But I agree with you. I agree with you. But all of a sudden you substitute something that you use its limitation to justify denying the parent's request, but you equate it. You say it's the statutory equivalent of that initial comprehensive evaluation or the triennial evaluation. I don't understand. I mean, you're getting the... You're saying that they're entitled to request it by its very nature, because of its nature, that they're not entitled to request information that they normally would under an IAEA. I mean, somehow you get the benefit of your concession. No, I don't think that's what we are saying. I think what we are saying is that a parent... The word evaluation is not clearly defined in any of the statutes or regulations, and it can mean a variety of things, including an initial comprehensive evaluation, including a triennial evaluation, which is comprehensive, but it can also mean the more assessments. And a parent certainly has a right to an independent educational evaluation, but what the statute provides is that a board must show that its evaluation is appropriate. And if certain things were never meant to be tested by that more limited evaluation, it would be impossible for a board to actually show its evaluation was appropriate in that regard. My son has a disability, and he's got an IEP. And two years after his initial assessment, there's an FBA done, and I get the FBA. And I said, well, the FBA is based upon certain kinds of assumptions and or data, and they didn't measure other data. They didn't do these other tests done. Can I ask for those other tests to be done in an IEE? I think that turns to the question of whether the tests you're asking for are within the scope of what an FBA is testing, and our contention here is that many... So it's the limitation of what the board does that defines what the parent can ask for? I don't think that's what the regulation... I think the regulation says that a parent is entitled to get an independent educational evaluation when they disagree with something that's obtained by the board. That's what the plain language of the statute says. And here, the board obtained an FBA, and FBAs do not include occupational therapy assessments. They do not include assistive technology assessments. So what a parent is entitled to is an FBA done by an independent individual so that they can determine whether or not the underlying FBA was appropriate. Okay. Tell me now... Stop for a second. Tell me exactly where in the regulations, where in the statute... Give me a citation. Don't give me a letter from Carol or to Carol. Tell me where in the regulations that your authority is for that. For the premise that the scope of the underlying evaluation dictates what the IE is? Correct. If a parent objects to an FBA, all they're entitled to is a mirror FBA done by somebody else. Tell me where. I think that's in the regulations. I just need to... I know you're going to tell me. I want a citation. Telling me it's in the regulations is not good enough. You need to tell me where. I'm just trying to put my finger on the correct site, but it's that. I believe it's in the regulations that... Well, you can send us a letter. Okay. If that's okay with Judge Sullivan, you can send us a letter. That's fine. That's fine. I mean, I have to say... Are you finished, Judge Wesley? Yeah, I am. Thank you. I have to say, it does seem to me that the problem here is a concession or a stipulation that an FBA is an evaluation kind of makes it hard to argue that you're not entitled to challenge that evaluation by requesting an IE. I think that is the problem here. I mean, I think there's a good argument that could be made that a functional assessment is not the kind of evaluation that is contemplated as a triennial evaluation. You've got to wait until you get one of those before you can then, as a parent, request an IEE. When the school district has conceded that it's an evaluation, I don't think I see anything in the reg or the statute that says that there's different approaches depending on what kind of an evaluation. That seems to be just made up. I would be interested in seeing what you can cite to us in that letter. All right. Any other questions for Mr. Driscoll? Hearing none, then we'll go back to Mr. Trapps for two minutes of rebuttal. Sure. Thank you, Your Honor. Once they concede and they have that the FBA is an evaluation, they will not find anything in the statute or regulations that distinguishes between different kinds of evaluations other than initial and reevaluations, and that would have different procedural safeguards. Your Honor, I also want to point out that the test that they're suggesting that the district court used of you get an IEE limited to what was intended to be measured by the evaluation you're disagreeing with is going to lead to plenty of controversy, administrative hearings, and litigation about that as well. We submit in our brief, I think, at pages 37 to 38 of the opening that all of these assessments we requested were related to behavior in fundamental ways, and having litigation about that side issue is no one's interest either. A word on that. It's not all true, but the problem is that, I mean, it seems to me that for a parent to say we're not going to cooperate with the evaluation, we are going to dictate what the evaluation ought to look like and demand an IEE before there's an evaluation. It's not in anybody's interest. It's not in the child's interest. You have one more minute. Well, Your Honor, again, time was of the essence. I know that is a funny thing to say given where we are, but in future cases, of course, this ruling will matter and time will be of the essence as well. They had to make the decision seeing a record of failed evaluations that were not conducted properly, a 2014 evaluation that was not done right, that was itself lacking multiple I want to stop you there. The 2014 evaluation, it seems to me that the real complaint about it is that the child's condition worsened, right? The passage of time means that the child's going to have different needs or he can be assessed differently relative to where he should be three years later. That's not disagreeing with the earlier evaluation. That's just simply saying that the child has different needs now, right? No, Your Honor. In 2014, even though DS was already engaged in headbanging, there was no assessment done of that that related to that fundamental issue that got worse agreed as the years went by, but that was not assessed. There were multiple assessments that were not done at all that were planned and were not performed. The parent has the right to request an assessment evaluation, a full-blown triennial evaluation every year if they want, right? Yes, Your Honor. So that's the remedy, isn't it? You're not happy with what you got in 2014 and it's now 2017. You just ask for a new evaluation and you get one, right? Well, Your Honor, that is one potential remedy, but the regulations say that another potential remedy is you disagree with an evaluation that was obtained and then the board bears the burden and administrative expedited proceeding to show that its evaluation is appropriate. You know, Mr. Traft, I think some of the frustration you're hearing from from some of us is that this is 2020. How old is this young man now? He is 18, Your Honor. He's entitled to three more years of special education. Right. I'm familiar. I have a long-running case that this is somewhat similar to in some ways and because it's being litigated, it has already maintained. Has the district been maintaining the status quo or have you made any progress with the district in terms of the services that he's receiving now? Your Honor, the process continues and the IEPs continue and the meetings continue, but to this day we have not gotten the assessments that we still very much need. Let me say something. I speak only for myself, but this case is tangled. Tangled cases make a lousy law. I speak only for myself. You too would be well served for your clients and for the law to settle this case. We'll give you a decision. I promise you that. But you would be well advised to settle this case. That's just my view. I haven't said a word to anybody about this case, but obviously you've gotten a lot of questions about this and in my view it is tangled. I'm trying to figure out how to make a clear explication of the law. I'm having trouble with it. You can finish now. You don't have to respond. I'm not asking you to respond. I'm just telling you lousy facts make a lousy law. So let's end it there because we have gone way over, I think. But thank you. So I guess we're going to ask for a letter of submission from Mr. Driscoll within a week. Okay, Mr. Driscoll? I will do that, Your Honor. All right. Okay. Thank you both. Your Honor, will we be able to respond? Sure. You can respond a week after that. Okay. Okay. Thank you. All right.